IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **Caroline County Branch of the** | ) | |
| **National Association for the** | ) | |
| **Advancement of Colored People** | ) | |
| Post Office Box 280 | ) | |
| Ridgely, Maryland 21660 | ) | |
| | ) | |
| **Caucus of African American Leaders** | ) | |
| 2216 Worcester Highway | ) | |
| Pocomoke City, Maryland 21851 | ) | |
| | ) | |
| **Roberta Butler** | ) | COMPLAINT FOR |
| 317 Brooklyn Avenue | ) | DECLARATORY AND |
| Federalsburg, Maryland 21632 | ) | INJUNCTIVE RELIEF |
| | ) | |
| **Sherone Lewis** | ) | |
| 3477 Holland Drive | ) | |
| Federalsburg, Maryland 21632 | ) | |
| | ) | |
| **Darlene Pitt Hammond** | **)** | |
| 401 Fairhaven Court | ) | |
| Federalsburg, Maryland 21632 | ) | |
| | ) | |
| **Elaine Hubbard** | ) | |
| 109 Geraldi Boulevard | ) | Civil Action No. 1:23-cv-484 |
| Federalsburg, Maryland 21632 | ) | |
| | ) | |
| **Nikendra Bordley** | **)** | |
| 5005 Hargreaves Court | ) | |
| Federalsburg, Maryland 21632 | ) | |
| | ) | |
| **Ryan Haynes** | ) | |
| 222 Brooklyn Avenue | ) | |
| Federalsburg, Maryland 21632 | ) | |
| | ) | |
| **Lywanda Johnson** | ) | |
| 128 Charlotte Avenue | ) | |
| Federalsburg, Maryland 21632 | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |

**Town of Federalsburg, Maryland**       )
Serve on:                                )
Lyndsey Ryan                             )
130 North Washington St                  )
Easton, MD 21601                         )
                                         )
         *Defendants.*                    )
                                         )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      This is an action brought by Black voters of the Town of Federalsburg, Maryland, the Caroline County Branch of the National Association for the Advancement of Colored People, and the Caucus of African American Leaders, challenging as racially discriminatory and unlawful the at-large, staggered-term election system for the Federalsburg Town Council. Against the backdrop of the history and legacy of racial discrimination and oppression in Caroline County and across Maryland's Eastern Shore, the Town's election practices and structure conspire with patterns of racial polarization in voting to empower Federalsburg's white majority to override and dilute the influence of Black voters, suppress Black candidacies, and deny Black residents an equal opportunity to elect their chosen representatives.  Although the Town's Black population has grown steadily over time to account now for fully 47 percent of its overall population, Federalsburg is, and always has been, ruled exclusively by white residents.  That is, *never in history* has a Black person been elected to any Federalsburg municipal office.  In this, Federalsburg's bicentennial year, the Town's Black residents seek at long last to change that.

2.      Plaintiffs seek to secure this change pursuant to Section 2 of the Voting Rights Act of 1965, which prohibits any voting law or practice that results in a "denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  As the Supreme Court has explained, "the essence of a Section 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30 (1986).  A problem identified in *Gingles* that often plagues at-large election systems occurs when Black voters in the minority are submerged within the larger pool of white voters, diluting their votes and diminishing their ability to elect their chosen candidates.  Factors considered when determining whether a challenged election law violates Section 2 by suppressing Black voters' ability to "participate equally in the political process and to elect candidates of their choice" include, among others: the history of voter discrimination in the area, the number of Black elected officials, racial polarization in elections, and socioeconomic disparities that persist in the community.  Time and again, Black voters on Maryland's Eastern Shore have successfully challenged racially discriminatory at-large election systems as violative of the Voting Rights Act to secure equal opportunity to participate in the political process and thereby gain a voice in the governance of their communities.

3.      Plaintiffs today follow in the footsteps of Black trailblazers like Carl Snowden, Honiss Cane, Charles Cephas, Fannie Birckhead, and Billy Gene Jackson.  Working with community and civil rights organizations, these visionary African-American leaders spearheaded successful legal challenges to the minority vote dilution embedded in at-large election systems in other Eastern Shore counties and municipalities.  As a result of election reforms brought about through litigation just like this, history-making change and community betterment occurred in

numerous communities up and down the Shore, with Black voters finally breaking through white voting blocs to elect Black candidates and gain a seat at the table of government for the first time. Plaintiffs now seek the same transformative opportunity for Black residents of Federalsburg.

4.      To achieve this goal, Plaintiffs ask that the Court: 1) Declare that Federalsburg's at-large, staggered term election system discriminates against Black voters in violation of Section 2 of the Voting Rights Act of 1965; 2) Issue an injunction prohibiting the Town from holding elections under this unlawful system; and 3) Enter an order mandating that the scheduled 2023 Federalsburg Town election, and all future elections, be conducted under a racially fair election plan, in compliance with the Voting Rights Act and all other relevant constitutional and statutory requirements.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek relief under the federal Voting Rights Act of 1965, 52 U.S.C § 10301.  Jurisdiction for Plaintiffs' claim for attorneys' fees, costs, expert witness fees and associated costs, and related non-taxable costs is based on 52 U.S.C § 10310(e) and 28 U.S.C. § 1920.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 90(a)(2) and 1391(b) because relevant acts occurred and will continue to occur within the District of Maryland.

## PARTIES

7.      The National Association for the Advancement of Colored People ("NAACP") is a non-profit, non-partisan organization with over 300,000 members, including hundreds residing in Caroline County, many of whom reside in the Town of Federalsburg.  The NAACP

is the nation's largest and oldest grassroots-based civil rights organization.  The NAACP's mission includes "eliminat[ing] racial hatred and racial discrimination," and removing "all barriers of racial discrimination through democratic processes."  Protection of the franchise and promotion of fair elections have been hallmarks of the NAACP's work throughout its history. Plaintiff Caroline County Branch of the NAACP is a branch of the Maryland State Conference of the NAACP which is in turn part of the national NAACP, and brings this action on behalf of itself and its members who reside and exercise their rights to vote in the Town of Federalsburg. Dr. Willie Woods is the current President of the Caroline County Branch of the NAACP and Plaintiff Sherone Lewis, a Federalsburg resident, is the Branch's Vice President.

8.      The Caucus of African American Leaders ("CAAL") is a membership-based consortium of organizations and individuals, including the NAACP, elected officials, and faith and community leaders, among others.  The Caucus seeks to raise awareness about current civil rights issues impacting the African-American community, particularly with respect to democracy and voting rights issues, by engaging in legal advocacy and encouraging the public to engage in local, state, and national elections to impact positive change.  In addition to organizing demonstrations, and participating in legal causes, the Caucus hosts monthly meetings to discuss issues affecting the community, and solicits donations for other civil rights organizations.  CAAL's Convener of members across the Eastern Shore is the Rev. James Jones, and Rev. Jones has participated extensively in Plaintiffs' ongoing efforts to address the challenged voting rights violations in Federalsburg.

9.      Plaintiffs Roberta Butler, Sherone Lewis, Darlene Pitt Hammond, Elaine Hubbard, Ryan Haynes, Nikendra Bordley and Lywanda Johnson are Black citizens of the United States, residing and registered to vote in the Town of Federalsburg, who lack an equal opportunity

5

to elect candidates of choice on the Federalsburg Town Council under its discriminatory at-large, staggered-term structure.

10.    Defendant Town of Federalsburg is a municipality within Caroline County and the State of Maryland created for the provision of government services and operating under Maryland law.

### FACTS GIVING RISE TO THIS ACTION

<u>Federalsburg Characteristics and Electoral System</u>

11.    The Town of Federalsburg, incorporated in 1823, is a Caroline County municipality governed by a Mayor and Town Council.  Its Town Council consists of four members elected through an at-large, staggered-term election system.  Elections are conducted on a non-partisan basis every two years, in September of odd years.  *See* Charter of the Town of Federalsburg, Art. II Elections § C2–1 (a).  The next Federalsburg election is scheduled to take place on September 26, 2023.

12.    The 2020 U.S. Census shows Federalsburg's Black population has increased over the last two decades from about 37 percent of the Town's total population in 2000 to 47 percent now, with Black, Indigenous and People of Color (BIPOC) making up over 53 percent of the Town's current population.  Whereas Federalsburg's non-Hispanic white population was 59 percent in 2000, by 2020 it had declined to 47 percent.  The growth of Federalsburg's Black population is also reflected in its share of the eligible voting population, *i.e.*, residents over 18 years of age.  Census data for 2020 shows that Federalsburg has a Black voting-age population of 43 percent, while the non-Hispanic white voting age population is just over 51 percent.

13.    Federalsburg's rich community diversity stands in stark contrast to the racial composition of the Town government, which has been maintained as the exclusive preserve of

white officials since the founding of Federalsburg 200 years ago.  One core means through which Defendant has maintained this white stranglehold on municipal power is its longstanding use of a racially dilutive at-large, staggered term election system, rather than a racially fair system that would afford Black Federalsburg voters an equal opportunity to elect candidates of their choice.

14.    Federalsburg's at-large election structure, exacerbated by its use of staggered terms, discriminates against Black voters by keeping them from being able to elect their candidates of choice on equal terms to their white counterparts.  Under the existing system, the Mayor and the Town's four council members are elected at-large, with council terms staggered such that the Mayor, who serves just a two-year term, and two council members stand for election every two years.  The at-large structure along with well-known racially polarized voting in the community, empowers the white voting-age majority to override the will of the Black voting minority within the larger pool of candidates, such that Black candidates of choice always lose.  The minority vote dilution inherent in the Town's at-large system is further reinforced by the staggering of terms, because this practice makes it impossible for minority voters to "single shoot" for their candidates of choice within a larger pool.  That is, through staggering of elections such that only two of the four council seats are contested at a time, with participation by the at-large electorate in all elections, Federalsburg thwarts Black voters' ability to empower their chosen candidates strategically through single-shot voting in the way they might without staggering.  As a result of this entrenched system of discrimination, Black candidates are discouraged from running; but even when they do run, they lose.

15.    This systemic problem is clearly evidenced in the pattern of six staggered elections conducted under the at-large system since Federalsburg last updated its election schedule in 2009 – none of which resulted in the election of any person of color.  Although maintenance of a racially

discriminatory system like this in and of itself discourages Black candidates from running for office, the uninterrupted and uniformly white composition of Federalsburg's government continued throughout this period, notwithstanding the candidacies of strong Black candidates such as Plaintiffs Roberta Butler and Darlene Pitt Hammond.  Most recently, in 2017, Ms. Butler and Angel Greene ran for the two open Council seats, both losing at-large to their two white opponents. With the dream that Black representation is possible in Federalsburg suppressed, no Black candidate even tried to run for office in 2019 or 2021.

<u>The Persistence of Racially Polarized Voting</u>

16.     Elections across the Eastern Shore, in Caroline County, and in Federalsburg have been and continue to be polarized along racial lines.  Racially polarized voting occurs when members of a protected class prefer candidate choices that are different from the rest of the electorate.  In Caroline County and Federalsburg, polarization prevails because there is a significant divergence between the candidates preferred by Black voters and those preferred by white voters.

17.     Black voters in Caroline County and Federalsburg vote in a politically cohesive manner, manifested by the higher rates at which Black voters express their preference for Black candidates in racially contested elections.

18.     Likewise, white voters in Caroline County and Federalsburg also typically vote in a cohesive manner, preferring white candidates over Black.  The level of racially polarized voting is such that white voters, who hold the majority, vote sufficiently as a bloc to defeat Black voters' candidates of choice, particularly in racially contested elections.

<u>History and Continuing Effects of Race Discrimination in Federalsburg</u>

19.    Historically, generations of Black residents of Maryland's Eastern Shore, including those in Caroline County and Federalsburg, have been subjected to egregious racial discrimination and oppression deeply impacting their lives and socioeconomic conditions.  Members of the Town's Black community bear present-day effects of longstanding societal, economic, and educational discrimination, effects that are apparent in the areas of education, employment, housing, and health.  These discriminatory outcomes reflect our society's continuing failure to address its long history of public and private racism and discrimination, and they hinder Black voters' ability to participate effectively in the political process.

20.    Thus, in a way reminiscent of an earlier era, Federalsburg still exists today as a dual society:  two worlds side-by-side, racially separate and unequal.  On the one hand, white government officials claim to see society as "a level playing field," equally open to Black and white residents.  The absence of African-Americans from the upper tiers of business and politics is attributed not to discrimination, but to "lack of engagement," apathy, or disunity in the local Black community.  Meanwhile, African-American residents inhabit another Federalsburg entirely – a racially polarized world in which they remain shut out by the all-white power structure amid feelings of hopelessness and futility, yearning for the opportunity to exercise political power.  In Plaintiffs' world, 30 percent of Black adults never finished high school, the Black unemployment rate is nearly triple that of the white unemployment rate, and over 69 percent of households rely on food stamps to feed their families.[1]  Two centuries of racial segregation and oppression have entrenched poverty in the Black community.  These conditions of poverty, segregation, and racial

---

[1] *American Community Survey 5-Year Estimates* dataset produced by the U.S. Census Bureau ("Census Bureau"), *available at*:
https://planning.maryland.gov/MSDC/Pages/american_community_survey/2015-2019ACS.aspx.

polarization have combined with Federalsburg's racially dilutive election system to thwart African-American participation in Town government.

21. Key among the discriminatory practices Black residents have confronted on the Eastern Shore are official voting practices or procedures that enhance the opportunity for discrimination against Black voters. This has included use of at-large elections, anti-single-shot provisions such as designated-post and staggered-term requirements, property qualification requirements for voting, dual registration procedures for local and state elections, criminal disenfranchisement laws, and candidate slating and siting of polling places through all-white volunteer fire companies to discourage Black participation and turnout. For Federalsburg's Black community, the collective effect of such practices is that no Black person from the Town has ever in history been elected to Town, County, State, or National office.

22. As this Court has repeatedly recognized, in the context of this history, exclusion of Black voters and candidates has been endemic to at-large election systems employed in counties and municipalities across the Shore. For example, in striking down as racially discriminatory a state legislative redistricting plan that used at-large districts on the Eastern Shore to prevent any Black candidate from the area winning election to the Maryland General Assembly, a three-judge panel of this Court noted:

> Blacks in Wicomico, Dorchester, Caroline, and Talbot Counties rarely run for public office in majority white constituencies, and when they do, they usually lose. At the county level, no black has ever been elected to any of the countywide single-member offices (i.e., State's Attorney, Clerk of Court, Register of Wills, or Sheriff). With only one exception, the four counties have never elected a black councilmember or commissioner at-large: Wicomico elected a black Republican County Councilmember, Emerson Holloway, in 1978, but he served just one term.

*Marylanders for Fair Representation v. Schaefer*, 849 F. Supp. 1022, 1059 (D. Md. 1994) (three-judge-court). *See also, Cane v. Worcester County*, 840 F. Supp. 1041 (D. Md. 1994) (invalidating

as racially discriminatory Worcester County's at-large, designated-post election system which unlawfully diluted Black votes and excluded Black candidates from office throughout history).

23.     Election reform achieved through voting rights advocacy and litigation like the *Cane* and *Marylanders for Fair Representation* cases has demonstrated that replacement of at-large elections and abolition of anti-single-shot provisions can be historic and transformative. This has been the experience when Black voters successfully challenged unlawful election systems like Federalsburg's in neighboring counties and municipalities on the Eastern Shore – including in Worcester, Somerset, and Dorchester Counties, the Cities of Salisbury and Cambridge, Towns of Berlin, Snow Hill, Pocomoke City, Princess Anne, Hurlock, and Easton. In each of these communities, once the at-large structure was replaced with a racially fair single-member district plan, Black voters were finally able to break through persistent entrenchment by white voting blocs to elect Black candidates to represent them – often for the first time in history. For Black community members, gaining a seat at the table of local government has made a dramatic difference in how they view and interact with their local governments, forever altering their feelings of belonging to the local community.

24.     At the other extreme, the adverse consequences of continuing an all-white government in a diverse community like Federalsburg are all too predictable: Matters of concern to Black residents have been left unaddressed despite the growing Black population, with little effective communication and a widening disconnect between Black residents and white officials. For example, of key concern to members of the Town's Black community is treatment of Black residents – especially young people – by the Federalsburg Police Department, which has become increasingly aggressive under the current Chief. Indeed, Chief Michael McDermott, whose record

11

is touted by white officials as exemplary,[2] has publicly endorsed racist tweets and attacks on elected Black members of Congress as not "American" enough and the media as a "communist" cult, with no evident concern or pushback from the Town. *See* "Federalsburg Police Chief says he agrees with Trump's racist tweets," A Minor Detail, July 15, 2019.[3]  Asked about McDermott's racist tirade, the Town of Federalsburg declined to comment. *Id.*

26.   Inattentiveness to the needs of Federalsburg's Black residents also leaves unaddressed their concerns regarding the lack of transparency and communication about Town functions, health care issues during the pandemic, housing, the educational needs of Black children and the lack of diversity among teachers in Federalsburg schools.

26.   Federalsburg is also the home of a growing population of Haitian immigrants whose families are living and working in the community and whose children are attending Federalsburg schools.[4]  But this growing community has little to no communication with or representation through the Council or Mayor's Office.  These residents have specific needs around translation, employment (primarily working in chicken processing plants), and other general needs that are

---

[2] *Federalsburg names McDermott new police chief*, MY EASTERN SHORE MD (Nov. 12, 2018) *available at* https://www.myeasternshoremd.com/times_record/news/federalsburg-names-mcdermott-new-police-chief/article_e62cd383-bf68-5dc8-9c25-24a9ca3e0974.html ("'Chief McDermott is a great fit for the Town of Federalsburg' said [then] Mayor Chuck Planner."); Town of Federalsburg, *Mayor's Minute Recap of the May 16th Workshop*, YOUTUBE (May 17, 2022), https://www.youtube.com/watch?v=nfTgap7mnKg (Mayor and Council naming May 15 as beginning of police week, paying tribute to the Federalsburg Police Department).

[3] Ryan Miner, *Federalsburg Police Chief says he agrees with Trump's Racist Tweets*, A MINER DETAIL, *available at* https://aminerdetail.com/federalsburg-police-chief-says-he-agrees-with-trumps-racist-tweets/.

[4] *See* Tom McCall, *A Haitian Church in Federalsburg*, MY EASTERN SHORE MD (Nov. 10, 2021), https://www.myeasternshoremd.com/stardem/news/local_news/a-haitian-church-in-federalsburg/article_7135d301-9941-5d7f-85a7-2154fbcd7d4e.html.

being fulfilled by local churches and nonprofits on the Eastern Shore, rather than by their local government.[5]

<u>Defendant's Delay and Resistance to Necessary Reform</u>

27.    In August of 2022, Black Federalsburg residents working with the Caroline County Branch of the NAACP, the Caucus of African American Leaders, and the American Civil Liberties Union of Maryland, contacted the Mayor of Federalsburg by letter, detailing their concerns about the Town's racially discriminatory election system.  The correspondence warned that the Town's continued maintenance of an all-white government through use of the at-large, staggered term system constitutes a violation of the Voting Rights Act.  Plaintiffs expressed willingness to work collaboratively with the Town to remedy this blatant legal violation, but made clear that to Black voters, the need for abolition of the staggered, at-large system is both non-negotiable and urgent.

28.    Plaintiffs recommended adoption of a racially fair district system and elimination of staggering to level the playing field for Black voters and candidates.  This is readily possible as a remedy for Federalsburg's legal violation, because the Town's Black voting-age population is sufficiently large and geographically compact to create two majority-Black districts within a four-

---

[5] *See* Tom McCall, *supra*; (describing needs of the Haitian community around immigration services, public health concerning COVID-19, employment opportunities, learning English, other educational needs, and gaps in services that are being filled by the Church of Nazarene and nonprofits on the Eastern Shore); *see also* Dan Fesperman & Chris Guy, *Hopes of a better life take root in Delmarva*, BALTIMORE SUN (Apr. 18, 1999), https://www.baltimoresun.com/news/bs-xpm-1999-04-18-9904170364-story.html (describing the large and increasing immigrant population, in particular the Haitian population in Federalsburg, since the early 1990s); *see also* Federalsburg Historical Society, https://federalsburghistoricalsociety.com/history (last visited Jun. 28, 2022) (Federalsburg Historical Society, describing the history of the town, but ends before any mention of the Haitian community that began immigrating to the area); *see also* Town of Federalsburg, https://www.townoffederalsburg.org/about_us/index.php (last visited February 19, 2023) (town website with no mention of the African American or the Haitian communities in the town).

member plan, thus affording Black residents election opportunities equal to those offered to white voters and commensurate with their numbers in the population.

29. To demonstrate Plaintiffs' proposed solution to the Town's violation of the Voting Rights Act, their correspondence included two election plans illustrating alternative ways the Town could cure the problem – each plan contemplating elimination of both at-large elections and staggered terms in order to create equality of opportunity. One plan creates four single-member districts, with two of the four districts including majority-Black voting-age population (VAP). The other option employs two districts electing two Council members per district, with majority-Black VAP in one of the two districts. The two sample plans were created by William S. Cooper, a nationally recognized voting rights expert with over 30 years of experience serving as demographer advising voters and government agencies – including the State of Maryland. The sample plans create districts that are compact and contiguous, with population totals properly apportioned among the districts, in accordance with all traditional redistricting principles. Most importantly, for this Town where Black residents have experienced 200 years of discrimination and oppression, Plaintiffs' plans prioritize racial fairness and compliance with the Voting Rights Act.

30. On October 5, 2022, Plaintiffs met with the Mayor of Federalsburg and other Town officials to discuss the voting rights violations they had identified. After discussing with Plaintiffs' representatives the reforms necessary to bring the election system into compliance with the law, the Mayor stated she would solicit feedback from other Town officials and community members about adopting a district system, and specifically, which district plan would best suit the Town.

31.     On October 17, 2022, the Town Council held a public hearing to discuss the Plaintiffs' proposal for replacing the Town's staggered, at-large system with district elections.  At that meeting, Federalsburg's Black community turned out in force, filling the Council chambers to capacity to make their voices heard about the urgent need for Federalsburg to reform its election system to bring it into compliance with the Voting Rights Act.  Plaintiffs' counsel from the ACLU and expert demographer William Cooper also joined the meeting to answer any legal questions and to explain the proposed redistricting plans.  Those attending the meeting were completely unified in their demand for systemic change, with Black residents courageously stepping forward one after another to provide eloquent and heartfelt testimony describing the devastating impact the Town's existing discriminatory system has on their lives.

32.     Dr. Willie Woods, the president of Plaintiff Caroline County NAACP, testified that there are needs of the Black community that are not being met, and that there is no better way to address those needs than for Black residents to have direct representation by someone from the community with a seat at the table of Town government.

33.     Plaintiff Roberta Butler testified in support of changing the at-large system: "Federalsburg is my home, my home town, and I want to see the best that it can be for my children, grandchildren, and all residents of the Town.  As you know Federalsburg has a sizeable population of Black and other people of color . . . unfortunately we have no representation on the Town Council, yet. . . . I ran for a Town Council seat a few years ago.  It pains me deeply, to see our voice missing at the decision-making table.  The lack of our representation is very discouraging; frankly I'm disappointed.  But we can't give up.  We have to keep on going.  This is our town too."[6]

---

[6] See October 17, 2022 Federalsburg Meeting Audio, available at:
https://cms8.revize.com/revize/federalsburg/Recording-2022-10-17--18-04-01.mp3

15

34.     Plaintiff Darlene Pitt Hammond also testified.   Ms. Hammond recounted movingly how when she tried to run for Town Council several years ago, Town officials intimidated her and made her feel unwelcome as a candidate by pressuring her to participate in an informal, unplanned candidate forum a week before the election – something never before required of white candidates.  In her testimony, Ms. Hammond called on the Town Council to avoid tactics like this that discourage Black candidacies and to change the way elections are conducted in Federalsburg to promote racial fairness.

35.     Plaintiffs Ryan Haynes and Nikendra Bordley also testified in support of a district plan, stating it is what the Town needs in order to provide the Black community an equal say and equal vote in who represents them as residents of the Town.

36.     Following Plaintiffs' compelling testimony, other community members testified about numerous instances they had experienced revealing the disregard the Town Council and Mayor display toward the concerns and needs of Black residents, ranging from disputes between neighbors, to street sweeping, to mistreatment of the Black community by police.  Palpable in the collective voices of Federalsburg's Black community was depth of the pain and hopelessness the current system inflicts upon Black residents, and the urgency they feel about the need for reform.  As one resident said in describing her mother's response to her efforts to convince her mother to vote in the Town's elections: "Why? Nothing is going to change."  Not a single person spoke in opposition to election reform that night.

37.     Immediately following the October 17, 2022 meeting, Town officials proclaimed their *unanimous* commitment to ending the at-large election system and to identifying reform options for a racially fair, district-based system in time for the 2023 Town elections.  It seemed to Black residents like a pivotal moment had come, in which Federalsburg might *finally* change in a

way benefitting the Black community.  Plaintiffs breathed a sigh of relief, daring to hope and expect that Federalsburg officials would carry through on their promise to promptly reform the discriminatory system, so that the Town's bicentennial celebration would mark a new day for Federalsburg, in which *all* residents would be welcomed and included.

38.     Sadly, however, Plaintiffs' buoyant hopefulness was short-lived.  Rather than moving forward expeditiously to address Plaintiffs' concerns following the October 17 meeting, in the weeks and then months that followed, Town officials moved more and more slowly, delaying further public hearing on election reform for several months, until January 23, 2023.  Repeatedly, Plaintiffs and their counsel warned that the need for reform of Federalsburg's system was time-sensitive, given the 2023 election schedule and the severity of the ongoing rights violations suffered by the Black community as a result of their lack of equal access to Federalsburg representative government.

39.     Ignoring Plaintiffs' efforts to ensure the reform process moved forward as quickly as possible, Town officials chose instead to move slowly and methodically.  Moreover, when the January public hearing finally occurred, rather than reaffirming their commitment to prompt and equitable reform, members of the Town Council began questioning the two districting options on the table and suggesting perhaps districting was not needed after all.  William Cooper, who had not been told he would be asked to present at this meeting and thus had not prepared to do so, was put on the spot to display and explain his plans again, with Council members nitpicking details and lodging various complaints about the plans.  Meanwhile, a white former Mayor in the audience loudly contended that any district-based remedy would "segregate the Town" and pit districts against each other based on race.  This complaint was picked up by the Council in refrain, ignoring the obvious reality that the Town already is racially segregated and elections racially polarized.

17

Additionally, Town officials expressed strong opposition to elimination of the staggered-term election structure that enhances discrimination by blocking single-shot voting.

40.   Dismissing the urgency Black residents feel about reforming Federalsburg's discriminatory election system, Town officials next suggested for the first time that, instead of employing districts, they might want to *begin* exploring alternative election options used nowhere else in Maryland, such as cumulative or ranked choice voting – even though such systems are ineffective and wholly unworkable when elections are staggered.  Given Council members' stated opposition to elimination of election staggering, Defendant's professions of new-found interest in exploring alternative election options seemed to Plaintiffs little more than a disingenuous stall tactic.  This view was reinforced when Council members offensively suggested that Black residents are themselves to blame for the Town's all-white government, due to their "lack of engagement" with an election system that unlawfully discriminates against them.

41.   On January 26, 2023, Plaintiffs again wrote to the Mayor about Defendant's repeated delays in addressing Plaintiffs' concerns and conveying alarm about the Town's apparent reversal of their promises to end the discriminatory election system in time for the scheduled September elections.  Through this correspondence, Plaintiffs provided a final warning to Defendant that Black voters would have no choice but to resort to litigation if the Town failed to implement a racially fair and legally compliant election system in time for the scheduled September 2023 elections.

42.   Notwithstanding the seriousness of Plaintiffs' warning, the Town's disregard for the law and lackadaisical approach to reform continued.  Although Federalsburg officials had said in their January meeting that they would finally vote on election reform on February 6, 2023, shortly before the Council's February 6 meeting the Town Manager announced that

discussion of election reform would not take place that day after all.  Instead, that discussion would be further delayed until February 21.

43.    At the February 6, 2023 Town Council meeting, two white residents – one the same former Mayor of the Town who had complained about Plaintiffs' reform proposals on January 23 – were allowed to speak about their opposition to districting.  Their testimony continued the narrative that districts would divide the Town by race, and that Black people are to blame for not turning out to vote as the reason for the lack of Black representation.  Again unmentioned was the Town's current segregation, or the fact that all of the Town's current white officials live in one compact area of Town, with none residing in the Town's Black neighborhoods.[7]

44.    Following this testimony, Town officials raised a complicated election proposal they said they would formally introduce on February 21.  But far from providing the fair opportunity Federalsburg's Black voters seek to participate equally in this year's elections, the Town's unprecedented proposal is to cancel this year's elections altogether, unlawfully keeping in place Federalsburg's all-white government until at least November of 2024.  This power grab by white powerbrokers unwilling to yield any control to Black residents – unlike anything ever seen before in any Maryland municipality – would completely deprive all Federalsburg residents of their right to participate in the Town's democracy in this historic bicentennial year, in violation of the most basic requirements of the Constitution and Voting Rights Act.  Of course, these violations

---

[7] Dr. Woods of the Caroline County NAACP attempted to comment during the portion of the agenda when the Council was discussing its proposed election plan.  But the Mayor refused to let her speak, contending, contrary to regular practice at Town meetings, that the time for public comment had passed.

would be felt most keenly by Black voters, whose rights to equal participation in Federalsburg government have been disrespected and canceled out for 200 years.

45.     Pursuant to the Town's proposal, staggered term, at-large elections would be retained for the Mayor and two council members, and districts would be put in place for just two of the council members, with the first election under the plan occurring in November of 2024. This year's elections would be canceled, with the Mayor and all incumbent Council members – all of whom are white – each holding over in office for 14 months beyond the term for which they were elected.  During the 2024 election, two single-member districts would be used to elect two Council members, while the Mayor would be elected at large, with the Mayoral term extended to four years.  But then in 2026, the Town would revert to a wholly at-large system for election of the other two Council members.  Thereafter, Council elections would be held every two years, alternating between the district system and the at-large system.

46.     On February 21, 2023, the Town Council introduced resolutions that amend the Town Charter to create this new election plan.  A public hearing was set for April 3, 2023 for residents to comment on the proposed changes, despite Plaintiffs' repeated opposition to the existing system, and the Town's proposed changes.

47.     This plan, rather than remedying the ongoing violation of Black voters' rights, instead would exacerbate the Town's ongoing discrimination against Black residents by depriving Black voters of the opportunity to participate in democracy as guaranteed by the Town Charter, unlawfully mandating another 14 months of all-white rule, and ultimately retaining in place most aspects of the same racially discriminatory at-large, staggered term election system that gives rise to Plaintiffs' Voting Rights Act claims.

48. Despite the urgency Plaintiffs have expressed about the need to bring the Town's election system into compliance with the Voting Rights Act before the September 2023 elections, the Town has stalled and misrepresented their intentions to comply with the law. Since their promises of fairness in October 2022, Federalsburg's white incumbent officials have wasted months of time only to propose a new election system that would lawlessly keep them in office far beyond their elected terms, deny Black voters – and all Federalsburg residents – their rights to participate in this year's bicentennial election, and ultimately, retain in place the racially discriminatory components of the existing system.

49. Because Defendant has failed to bring the Town's election system into compliance with the Voting Rights Act in time for Federalsburg's scheduled September 2023 elections, and proposes to continue denying Black voters the right to participate fairly and equally in the Town's electoral process, this Court's intervention is urgently needed.

## CAUSE OF ACTION

**Violation of Section 2 of the Voting Rights Act of 1965; 42 U.S.C. § 1983**
(All Plaintiffs Against Defendant Town of Federalsburg)

50. Plaintiffs re-allege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

51. Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, applies to the Town of Federalsburg. The Black population in Federalsburg is sufficiently numerous and geographically compact such that two properly apportioned electoral districts can be drawn within a four-member plan in which Black residents would constitute a majority of the voting-age population.

52.     Racially polarized voting persists in elections in Caroline County and Federalsburg, directly impacting elections for members of the Federalsburg Town Council.  White voters typically vote as a bloc to defeat Black voters' candidates of choice.

53.     The existing at-large, staggered term method of electing members of the Town Council of Federalsburg dilutes Black voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  That is, staggered elections conducted in Federalsburg pursuant to the at-large, method have in the past and will in the future result in a denial or abridgment of Black voters right to vote on account of their race, color, or ethnicity, by having the effect of canceling out or minimizing their individual voting strength in Town elections.  The existing election system does not afford Plaintiffs an equal opportunity to participate in the political process and elect candidates of their choice equal to that afforded other members of the electorate, diluting Black voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  Plaintiffs bring this claim both under the Voting Rights Act itself, as well as pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully pray that this Court:

A.     Enter a declaratory judgment that the at-large method of electing members of the Federalsburg Town Council dilutes Black voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

B.     Enjoin Defendant and its officers, agents, and employees, successors in office, and all other persons in active concert and participation with them, from conducting future elections for members of the Federalsburg Town Council using the at-large method of election;

22

C.      Order Defendant and its officers, agents, and employees, successors in office, and all other persons in active concert and participation with them to administer the 2023 Federalsburg Town Council election on its scheduled date or as soon thereafter in 2023 as feasible using a method of election that complies with Section 2 of the Voting Rights Act in both this and all future elections for members of the Federalsburg Town Council;

D.      Award the Plaintiffs the costs of this action together with their reasonable attorneys' fees and reimbursement of expert witness fees and all other litigation costs pursuant to 52 U.S.C. § 10301(e) and 28 U.S.C. §1920; and

E.      Retain jurisdiction of this action and grant the plaintiffs any further relief which may in the discretion of the Court be just and proper.

Dated:  February 22, 2023

| /s/ *Deborah A. Jeon* | /s/ *Daniel W. Wolff* |
|---|---|
| Deborah A. Jeon (Bar #06905) | Daniel W. Wolff (Bar #19940) |
| Nicholas Taichi Steiner (Bar #19670) | CROWELL & MORING LLP |
| AMERICAN CIVIL LIBERTIES UNION | 1001 Pennsylvania Avenue, N.W. |
| OF MARYLAND | Washington, D.C.  20004-2595 |
| 3600 Clipper Mill Road Suite 350 | (202) 624-2621 |
| Baltimore, MD  21211 | |
| (410) 889-8555 | |
| | |
| *Counsel for the Plaintiffs* | *Counsel for the Plaintiffs* |