IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| CAROLINE COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al..*, | * * * * * * |
| Plaintiffs, | * * |
| v. | Civil Case No.: SAG-23-00484 |
| TOWN OF FEDERALSBURG, MARYLAND | * * * |
| Defendant. | * * |

**MEMORANDUM OPINION**

A coalition of individual Black voters and two civil rights organizations ("Plaintiffs") brought this action against the Town of Federalsburg, Maryland ("the Town"), alleging that the Town's at-large, staggered-term election system for its Town Council violated Section 2 of the Voting Rights Act of 1965 ("VRA"). ECF 1. Prior to and during the instant action, the Town took steps to replace its election system with one that would assure greater electoral opportunity for Black Federalsburg residents. On September 26, 2023, with a new district-based system, the Town held an historic election in which Black Federalsburg residents won seats on the Town Council for the first time in the Town's 200-year history. Nonetheless, Plaintiffs ask this Court to find that the Town's prior at-large election system violated the VRA and to award Plaintiffs nominal damages. ECF 40 ¶ 7. For the reasons explained below, the Court denies Plaintiffs' requests and dismisses this case as moot.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The Town of Federalsburg, Maryland, is governed by a mayor and a four-member Town Council. ECF 1 ¶ 11. Prior to the filing of this case, the Town used an at-large, staggered election system, whereby the mayor and half of the Town Council were elected every two years by all Federalsburg residents. *See* ECF 16-2 at 5.[1] Under this system, no Black resident of Federalsburg had been elected to municipal office, even though Black residents comprised 37 percent of the Town's population in 2000 and 47 percent of the population in 2020. ECF 1 ¶ 12; ECF 14 ¶¶ 1–4. In August, 2022, Plaintiffs raised concerns with the Town about its existing election system and proposed two separate election plans they believed would improve electoral opportunities by adopting a racially fair district-based system and eliminating staggered terms. ECF 1 ¶¶ 27–29; ECF 14 ¶¶ 27–29. On October 17, 2022, the Town Council held a public hearing to discuss Plaintiffs' proposals and unanimously agreed to end the at-large election system and implement a racially fair district system in time for the Town's upcoming September, 2023 election. ECF 1 ¶ 37; ECF 14 ¶ 37.

Over the next few months, the Town held internal and public meetings to discuss Plaintiffs' proposals. In early February, 2023, the Town proposed a hybrid system, whereby the Town Council would have members elected both from single-member districts and at-large seats beginning in November, 2024. ECF 1 ¶ 45; ECF 14 ¶ 45. Plaintiffs then filed the instant action on February 22, 2023, asserting that the Town's proposal would not only retain most aspects of the existing election system, but would also exacerbate ongoing racial discrimination against Black residents by canceling the 2023 election and keeping the Town Council's white incumbents in

---

[1] This Court uses the ECF page numbers in the header at the top of the page.

power for an additional 14 months. ECF 1 ¶ 47. In addition to seeking attorney's fees, litigation costs, and any further relief this Court would find just and proper, Plaintiffs requested that this Court (1) declare that the at-large method of electing members to the Federalsburg Town Council violated Section 2 of the VRA; (2) enjoin the Town from conducting future elections using the at-large method; and (3) order the Town to administer the 2023 election and all future elections using a VRA-compliant election plan. *Id.* ¶ 53(A)–(E).

After Plaintiffs filed their Complaint, the Town withdrew its initial proposal and proposed a new plan (through three separate resolutions) that would reinstate the 2023 election and use a new two-district system to elect two councilmembers (one from a majority white district and one from a majority Black district) every two years. *See* ECF 16-2; ECF 16-1 at 6. The new proposal would therefore eliminate at-large voting for the Town Council, but would retain staggered terms for two councilmembers. Plaintiffs soon thereafter moved for a preliminary injunction, asking this Court to require the Town to formally abolish the prior at-large, staggered election system and to implement a racially fair plan for the September, 2023 election. ECF 8. On April 3, 2023, the Federalsburg Town Council and mayor amended the Town's existing Charter to officially end the at-large election system in favor of the two-district, staggered system. ECF 16-1 at 2–3. The Town thus opposed Plaintiffs' preliminary injunction motion on the grounds that it was moot and no irreparable harm would occur from a now-defunct at-large election system. *Id.* at 5–9.

On May 9, 2023, this Court held an evidentiary hearing during which it clarified that the Town's new plan could comply with the VRA if the majority Black district elected at least two councilmembers in 2023. *See* ECF 25. As Plaintiffs noted at that hearing, retaining the staggered terms for each councilmember and electing only one representative from each district would continue to dilute the Black vote in the September, 2023 election, because the Town's white

majority would still control three of the four councilmember seats. Tr. May 9 Hrg. 31:15–32:7. However, if the majority Black district elected two seats in 2023, then the staggered terms would not be an issue because the Black residents of Federalsburg would have the same opportunity as their white counterparts to elect their candidates of choice. *See id.* 33:4–10 ("[I]f the [Town] wanted to just have all of the town councilmembers up for election this year in September 2023, then that would allow the two candidates of choice from the Black community to be elected, essentially doing the same thing as what would happen under a staggered system if the two candidates up for election were also from the Black community."). Accordingly, the Court ordered the Town to submit a status report detailing how it planned to implement its new election system and achieve compliance with the VRA in the September, 2023 election. ECF 26.

On May 23, 2023, the Town advised the Court that a new resolution (Resolution 23-07) would open all four councilmember seats in the 2023 election. ECF 27. On June 12, 2023, the Town adopted Resolution 23-07 and secured the resignation of two incumbent councilmembers to put two more seats on the September, 2023 ballot. *See* ECF 35; ECF 37-1 at 6–7. Nevertheless, Plaintiffs moved for summary judgment, seeking, (1) a declaration that the Town's amended Charter violated the VRA, and, for the first time, (2) nominal damages. ECF 36. In opposition, the Town reiterated that elimination of the at-large election system in favor of a district-based system mooted Plaintiffs' action. ECF 37-1 at 8–10. The Town also contended that even if the case were not moot, its plan under Resolution 23-07 would ensure that the September, 2023 election would achieve compliance with the VRA by electing two councilmembers each from two equally populated districts, one of which would be majority-minority. *See id.* at 12–14.

Indeed, on September 26, 2023, the Town of Federalsburg elected a fresh slate of four councilmembers according to the Town's plan under Resolution 23-07. ECF 40 ¶ 1. Two of these

4

councilmembers are Black for the first time in Federalsburg history. In light of this historic election, the parties agreed that it was no longer necessary for this Court to order into effect Resolution 23-07 nor to pass judgment on the amended Town Charter, "given that the election followed . . . Resolution 23-07, and no challenges, legal or otherwise, were made as to the proprietary of amending the charter through simple resolution." *Id.* ¶¶ 2–3. Notwithstanding the successful election, Plaintiffs still seek (1) a finding that the Town's past election practices violated Section 2 of the VRA and (2) an award of nominal damages for each individual Plaintiff pursuant to 42 U.S.C. § 1983. *See id.* ¶ 7.[2] The Town, as it has throughout this litigation, argues that the case is moot because Federalsburg successfully conducted an historic election under a new, racially fair election system. *See id.* ¶ 9.

## II. LEGAL STANDARDS

Article III of the U.S. Constitution limits this Court's jurisdiction to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see Holloway v. City of Va. Beach*, 42 F.4th 266, 273 (4th Cir. 2022). This limit requires a dispute that is "real and substantial, seeking specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Genesis Healthcare, Inc. v. Becerra*, 39 F.4th 253, 259 (4th Cir. 2022) (internal quotation marks omitted) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Additionally, "this requirement must be satisfied at all stages of a federal court proceeding, and if events subsequent

---

[2] In the days following the September 26, 2023, election, Plaintiffs advised the Court that they were still seeking declaratory judgment on the Town's past election practices. ECF 40 ¶ 7. On November 15, 2023, this Court held a hearing during which Plaintiffs expressed that they no longer seek declaratory relief in this matter and only seek a finding that the Town's past election system violated Plaintiffs' rights under Section 2 of the VRA for purposes of awarding nominal damages.

5

to the commencement of the action resolve the dispute, the action should be dismissed as moot." *Id.*

"A dispute is moot . . . when 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Holloway*, 42 F.4th at 273 (quoting *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016)). A case may become moot, for example, "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted), or if a challenged law is "superseded by a significantly amended statutory scheme," *Holloway*, 42 F.4th at 273 (quoting *Esposito v. S.C. Coastal Council*, 939 F.2d 165, 171 (4th Cir. 1991)). Although parties in such circumstances "may desire that [a court] render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong," such an advisory opinion has no "practical effect on the outcome of the matter," and the case must be dismissed for lack of jurisdiction. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010) (internal quotation marks omitted) (quoting *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009)); *see, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. This Action Is Moot Because the At-Large Election System at Issue in Plaintiffs' Complaint No Longer Exists

By virtue of Federalsburg's historic September 26, 2023, election, the issues presented in this case are no longer live and this Court's resolution of them "could not possibly have any practical effect on the outcome of the matter." *Norfolk S. Ry. Co.*, 608 F.3d at 161. Plaintiffs

originally challenged the Town's "at-large method of electing members of the Federalsburg Town Council," ECF 1 ¶ 53(A), but the Town has voluntarily, formally, and significantly amended the challenged system in favor of a new district-based system, *see Esposito v. S.C. Coastal Council*, 939 F.2d 165, 171 (4th Cir. 1991). Specifically, candidates for the Town Council's four seats are no longer elected at-large; instead, they are chosen by voters from their own individual districts. ECF 16-2 at 5; *Holloway*, 42 F.4th at 274. The new legislative districts have substantially equal population, ECF 16-2 at 6, and one of them contains a Black population of over 64%, ECF 27-2 at 2. And finally, by securing the early resignation of two councilmembers in advance of the September, 2023 election, the Town ensured the equal opportunity for Black residents to select their candidates of choice in that election.

These significant changes eliminated "the chief offending features of the [Town]'s challenged system," and gave the Plaintiffs precisely what they sought in their Complaint. *Holloway*, 42 F.4th at 275; *see* ECF 1 ¶ 53(B)–(C) (requesting that the Town cease using the "at-large method of election" in "future elections for members of the Federalsburg Town Council," and that it "administer the 2023 Federalsburg Town Council election on its scheduled date . . . using a method of election that complies with Section 2 of the Voting Rights Act in both this and all future elections"). Additionally, the Town's new system achieved the historic election of two Black councilmembers for the first time in the Town's 200-year history, realizing Plaintiffs' "dream that Black representation is possible in Federalsburg." ECF 1 ¶ 15. Plaintiffs' renewed request for a judgment on the Town's past election practices thus seeks "an advisory opinion as to the legal status of an effectively defunct electoral system." *Holloway,* 42 F.4th at 275. Under well-established principles of justiciability, the Court has no power to render such an opinion

and must dismiss this case as moot. *See, e.g.*, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *Flast v. Cohen*, 392 U.S. 83, 96 (1968); *Holloway*, 42 F.4th at 275.

### B. Plaintiffs' Belated Request for Nominal Damages Under 42 U.S.C. § 1983 Cannot Defeat Mootness

Plaintiffs' belated request for nominal damages pursuant to 42 U.S.C. § 1983 cannot defeat mootness because Plaintiffs failed to plead a claim for nominal damages and never sought leave to amend their Complaint to do so.[3] Although the Supreme Court recently carved out an exception to mootness in Section 1983 actions, that carve out applied where a plaintiff had properly pled a claim for nominal damages. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (Kavanaugh, J., concurring). Here, however, Plaintiffs never stated a claim for any type of damages in their Complaint and instead requested nominal damages for the first time in their summary judgment briefing, after the Town amended its Charter and passed resolutions securing a more racially fair, two-district election system. *See* ECF 36; ECF 35. Nonetheless, Plaintiffs invoke *Uzuegbunam* and advance two arguments for why this Court should infer a claim for nominal damages in this action. Both arguments fail.

Plaintiffs first contend that the Court should overlook their belated request for nominal damages because under Federal Rule of Civil Procedure 54(c), a court may award "all necessary

---

[3] In a footnote to Plaintiffs' reply to their summary judgment motion, Plaintiffs inconspicuously suggest that the Court should grant them leave to amend their Complaint to seek nominal damages because courts must "freely give leave when justice so requires." ECF 38 at 7 n.9 (quoting FED. R. CIV. P. 15(a)(2)). Although courts "liberally allow amendment," *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010), Plaintiffs never filed a motion for leave to amend their Complaint. To the extent that this footnote represents Plaintiffs' motion for leave to amend, the Court denies it because it was not properly made. *See* FED. R. CIV. P. 7(b); FED. R. CIV. P. 15(a); Loc. R. 103.6(a) (D. Md. 2023); *see also Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (upholding a district court's refusal to grant a plaintiff's request for leave to amend made "only in a footnote" in a brief).

and proper relief" including "all relief to which each party is entitled, even if the party has not demanded such relief in its pleadings." ECF 38 at 5 (quoting *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65–66 (1978)). However, Rule 54(c) applies to final judgments, and there is no final judgment in this case. *See Fox v. Bd. of Trs. of State Univ. of New York*, 42 F.3d 135, 142 (2d Cir. 1994). Plaintiffs attempt to get around this threshold problem by principally relying on cases that applied Rule 54(c) before a final judgment had been entered, but those decisions contained live claims that would eventually lead towards final judgment. For example, in *Robinson v. Lorillard Corp.*, the Fourth Circuit evaluated whether a company's departmental seniority system had a continuing discriminatory impact on a specific class of Black employees in violation of Title VII of the Civil Rights Act of 1964. 444 F.2d 791, 795 (4th Cir 1971). After holding that the departmental seniority system did have a continuing discriminatory impact, the court then upheld an award of backpay under Rule 54(c) despite plaintiffs' failure to request it in their complaint because Title VII specifically allows an award of back pay, not as damages, but as an equitable remedy under Title VII's relief provision, and as such, "the obligation to provide back pay stems from the same source as the obligation to reform the [ongoing Title VII violation]." *Id*. at 802–03. Similarly, in *Brightview Group, LP v. Teeters*, this Court held that a plaintiff may be entitled to punitive damages under Rule 54(c) notwithstanding its failure to demand such relief in its pleadings when the plaintiff had live, triable claims against the defendant and placed the defendant on notice of its potential exposure to punitive damages for those claims at the outset of the case. Civ. No. SAG-19-2774, 2022 WL 846208, at *8 (D. Md. Mar. 22, 2022); *accord Johnson v. Helion Techs., Inc.*, Civ. No. DKC 18-3276, 2022 WL 3043413, at *3–*4 (D. Md. Aug. 2, 2022) (allowing a belated claim for nominal damages in a live, triable dispute involving the Fair Labor Standards Act ("FLSA")); *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24–25 (4th Cir. 1963) (accepting

that a party's misconception of a legal theory in a live dispute in a debt recovery action does not forfeit the party's legal rights and the relief that party is entitled to); *see also Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 851–52 (4th Cir. 1992) (determining that the district court had power to grant all further necessary and appropriate relief based on a declaratory judgment issued in a live controversy over wrongful termination of an insurance agency); *Mora v. Lancet Indemnity Risk Retention Grp., Inc.*, Civ. No. PX-16-960, 2018 WL 1811516, at *2 (D. Md. Apr. 17, 2018) (permitting a claim for monetary relief made after declaratory judgment in a live controversy over insurance coverage). Because those cases involved live claims proceeding to or after final judgment, Plaintiffs' reliance on them in this otherwise moot case fails.

Plaintiffs also argue that this Court should infer a claim for nominal damages from their general prayer for "any further relief which may in the discretion of the Court be just and proper." ECF 1 ¶ 53(E); *see* ECF 35-1 at 39 n.15. The Fourth Circuit has previously declined a similar invitation, holding that such "a boilerplate request for other and further relief as the Court deems just and proper . . . does not preserve a nominal damages claim when there is absolutely no specific mention in the Complaint of nominal damages." *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141 (2d Cir. 1994)).[4] *But see Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 602–04 (4th Cir. 2020) (allowing a claim for nominal damages to defeat

---

[4] The Court is aware that "[a]n averment of general damages is sufficient to state a claim for nominal damages." *Ins. Servs. of Beaufort, Inc.*, 966 F.2d at 853. Here, however, Plaintiffs have not sought any damages in their Complaint. *See Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 37 F.4th 1357, 1362 (8th Cir. 2022) (holding that nominal damages are available and sufficient to stave off mootness when a plaintiff asserted a general claim for damages in its amended complaint); *accord Heights Apartments, LLC v. Walz*, 30 F.4th 720, 726 (8th Cir. 2022) ("Because [a plaintiff] requested relief in the form of money damages, we have jurisdiction to consider the merits of its remaining claims.") (citing *Uzuegbunam*, 141 S. Ct. at 802).

mootness when the claim was made in an amended complaint).[5] Even in post-*Uzuegbunam* Section 1983 cases, courts have declined to recognize standalone nominal damages claims when plaintiffs first sought them after their claims were moot. *See BK Salons, LLC v. Newsom*, No. 2:21-cv-00370-JAM-JDP, 2021 WL 3418724, at *3 (E.D. Cal. Aug. 5, 2021) ("Plaintiff's *Uzuegbunam* argument fails because as Plaintiff concedes, it has not asked for damages in the Complaint [and] [t]hat Plaintiff intends to file a motion to amend the complaint in light of *Uzuegbunam* does not change this analysis.") (internal quotation marks and citations omitted); *Roth v. Farmingdale Union Free Sch. Dist.*, No. 18-CV-4319 (RPK) (ARL), 2022 WL 1666964, at *2 (E.D.N.Y. May 25, 2022) ("A request for damages will not avoid mootness if it is inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.") (internal quotation marks omitted) (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)). Indeed, the Supreme Court has previously instructed federal courts to bear "close inspection" to "a claim for nominal damages, extracted late in the day from [a plaintiff]'s general prayer for relief and asserted solely to avoid otherwise certain mootness." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997). The Court has followed that instruction here.

---

[5] In addition to that plaintiff's amended complaint for nominal damages, the *Grimm* court recognized that the dispute also remained live because the defendant continued to "vigorously contest the legality" of the challenged policy as applied to the plaintiff. *Grimm*, 972 F.3d at 605 (internal quotation marks omitted) (citing *Chafin v. Chafin*, 568 U.S. 165 (2013)). As the Town represented during the November 15, 2023, hearing, it has no intention of defending its prior election system and "desires to move forward and continue inclusion and growth in the Town of Federalsburg." ECF 40 ¶ 12.

Upon its careful inspection, this Court perceives no authority for it to infer nominal damages from a general prayer for relief so that Plaintiffs can overcome mootness.[6] To hold otherwise would mean that Section 1983 claims—and perhaps many more types of claims—could never become moot. The Court does not read *Uzuegbunam* to extend this far. And importantly, such a holding would contravene the Fourth Circuit's decision in *Holloway v. City of Virginia Beach*, a case with nearly identical facts and decided shortly after *Uzuegbunam*. *Holloway* made clear that when a challenged municipal election system like the one in Federalsburg ceases to exist, federal courts "have no jurisdiction to entertain" whether the plaintiffs proved that the old system violated the VRA. 42 F.4th 266, 275 (4th Cir. 2022). That is because the plaintiffs in *Holloway* received all that they sought—that the city no longer administer, implement, or conduct any future elections under the challenged at-large method of city council elections. *Id.* Thus, for a court to nonetheless opine on the merits of an "effectively defunct electoral system," when doing so would have "no practical effect on the outcome of the matter," would result in "an advisory opinion . . . that, of course, lies outside the scope of Article III jurisdiction." *Id.* Because the facts of this case closely mirror those in *Holloway*, this Court is bound by that decision and declines to infer nominal damages in a cause of action solely to "breathe life into a moribund dispute." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 142 (2d Cir. 1994); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999).

---

[6] Plaintiffs also suggest that the Court should infer nominal damages from their Complaint because Plaintiffs brought their suit under both Section 1983 and the relief available under Section 1983 includes nominal damages. *See* ECF 36-1 at 36–38 (citing *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)). Plaintiffs concede that no court in this jurisdiction has addressed whether Section 2 of the VRA is enforceable under Section 1983. ECF 38 at 13–14. In any event, the Court need not reach this question because it does not cure Plaintiffs' failure to plead a claim for damages in their Complaint.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs are not entitled to nominal damages. Plaintiffs' motion for summary judgment is therefore denied as moot, and the case must be dismissed for lack of jurisdiction. A separate Order follows.


Dated: November 20, 2023                                        /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge